UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CATERPILLAR CRÉDITO, S.A. DE
S.V., SOCIEDAD FINANCERA DE
OBJECTO MULTIPLE, E.R.,

    Plaintiff,

v.

    CASE NO.:

VENEQUIP MACHINERY SALES
CORPORATION,

    Defendant.

## COMPLAINT FOR BREACH OF CONTRACT

Plaintiff, Caterpillar Crédito, S.A. de S.V., Sociedad Financera de Objecto Multiple, E.R. ("Cat Crédito" or the "Plaintiff") hereby files this Complaint against Defendant, Venequip Machinery Sales Corporation, ("VMSC Miami" or the "Defendant", and together with the Plaintiff, the "Parties") and states the following in support:

### PRELIMINARY STATEMENT

Plaintiff, Cat Crédito is part of the Caterpillar group, the world's largest manufacturer of industrial equipment and engines. Cat Crédito extends credit to various select Caterpillar customers and dealers to, among other things, finance the purchase of Caterpillar equipment. As set forth herein, Cat Crédito extended loans to its borrower, VMSC Curacao, N.V. (the "Borrower"), the unconditional repayment of which was guaranteed by several related Borrower entities, including the Defendant, VMSC Miami. The Borrower has defaulted on its repayment and other obligations, and Cat Crédito seeks to enforce all rights and remedies available to it as

against VMSC Miami for breach of its guarantee obligations. Cat Crédito seeks damages resulting from this breach in excess of $120 million.

## PARTIES AND RELATED PARTIES

1. The Plaintiff, Cat Crédito, is a company organized in accordance with the laws of (Mexico), with its registered office located in Monterrey, Nuevo Leon Mexico, registered in the Commercial Register of the Federal District.

2. Cat Crédito is a subsidiary of Caterpillar Financial Services Corp. ("CFSC"). CFSC is a Delaware corporation, with principal offices located at 2120 West End Avenue, P.O. Box 34001, Nashville, Tennessee, 37203-0001.

3. CFSC is a subsidiary of Caterpillar Inc. ("Caterpillar") incorporated in Delaware, with its principal place of business located at 510 Lake Cook Rd., Suite 100, Deerfield, IL 60015.

4. Defendant, Venequip Machine Sales Corp. ("VMSC Miami"), is a company organized and existing under the laws of the State of Florida, with its principal offices located at 790 NW 107th Ave., Ste 105, Miami, Florida, 33172. VSMC Miami is the principal trading entity for related entities known as the Venequip Group.

5. Upon information and belief, non-party Carlos Bellosta Pallures ("Bellosta") is the controlling shareholder of VMSC Miami by virtue of his interest in certain related entities and/or trusts of which he is the settlor and a beneficiary.

6. Non-party Corporate Guarantor Venequip S.A., is a company organized in accordance with the laws of the Bolivarian Republic of Venezuela, with its place of business located at Zona Industrial Sur, Avienda Luis Ernesto Branger, Edificio Venequip, Edu Carabobo Venezuela.

7. Non-party Corporate Guarantor Solidus Investments Corporation (formerly Venequip, S.A. Ltd.), is a company organized in accordance with the laws of Barbados with its place of business located at Chancery House, High Street, Bridgetown Barbados.

8. Non-party VMSC Curacao is a public limited company, established in Curacao registered in the Commercial Register of the Chamber of Commerce, No. 95205.

## JURISDICTION AND VENUE

9. The Plaintiff is a citizen of a foreign state and the Defendant is a corporate citizen of the State of Florida.

10. The amount in controversy exclusive of interest and costs exceeds the sum of $75,000. Therefore this Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1332.

11. Venue is confirmed by the terms of the Corporate Guarantee (described below). Specifically, the Corporate Guarantee provides that each party, including the Defendant, irrevocably and unconditionally submits to the jurisdiction of the competent courts of their domicile, in the Defendant's case, the State of Florida (Clause 11(b)).

12. The Corporate Guarantee is governed by the laws of Mexico.

## FACTUAL BACKGROUND

1. **THE ORIGINAL LOAN AGREEMENT**

13. Cat Crédito provided significant financing to select dealers in order to allow them to purchase inventory, upgrade facilities and otherwise expand their ability to serve owners and purchasers of Caterpillar's products. In or around May, 2007, the Plaintiff and Borrower entered into such a financing (loan) agreement whereby Cat Crédito provided a loan to the Borrower in the principal amount of $4,869,229.53 (*see*, the "Original Loan Agreement," attached hereto as **Exhibit A**).

14. To secure payment of each and every present and future obligation arising from the Original Loan Agreement, the Parties entered into a written corporate guarantee agreement dated as of May, 2007 (the "Corporate Guarantee," attached hereto as **Composite Exhibit B**).[1] The parties to the Corporate Guarantee, including VMSC Miami, guaranteed the repayment of all amounts advanced under the Original Loan Agreement, as amended. Specifically, the Corporate Guarantee provides in Clause 3:

> THREE. Survival of Guarantee; Modification of Secured Obligation. To the extent allowed under applicable law, this Guarantee shall remain in force regardless of whether Caterpillar engages in any of the following activities:
>
> (a) takes or maintains any guarantee for full or partial performance of the Secured Obligations, or exchanges, replaces, increases, decreases, waives, or releases any of said guarantees;
>
> (b) renews, expands, or changes the terms and conditions of the Secured Obligations or does not demand performance of the Secured Obligations;
>
> (c) exercises its rights and remedies under this Guarantee and any other guarantee, and enforces all or part of the Secured Obligations in any order, and Caterpillar shall be entitled to require performance from Guarantors, regardless of any action taken by Caterpillar to enforce any of its rights or remedies against Guarantors, of all or part of the Secured Obligations or of any payment received under this Guarantee or any other guarantee.

## 2.  AMENDMENTS TO THE ORIGINAL LOAN AGREEMENT

15. Between 2007 and 2015 the Original Loan Agreement was extended and amended several times, including to increase the principal amount of the loan and credit available to Borrower. Specifically:

---

[1] The Corporate Guarantee was also made by Venequip S.A., and Solidus. Cat Crédito has initiated litigation against these two Corporate Guarantors as well as the Borrower in the court of First Instance of Curacao for their breaches of the Corporate Guarantee and related loan documents.

    (a)    on June 7, 2012 the principal amount available was increased to a maximum credit limit of $55 million (attached hereto as **Exhibit C**).

    (b)    on June 19, 2012 the principal amount available was further increased to a maximum credit limit of $68 million (attached hereto as **Exhibit D**); and

    (c)    on November 27, 2013, the principal amount available was further increased, and the Borrower issued a companion promissory note in favor of the Plaintiff in the principal amount of $99,037,153.47 (the "VMSC Promissory Note," attached hereto as **Exhibit E**).

**3.    THE 2015 LOAN AGREEMENT**

16.    On October 13, 2015, Cat Crédito and Borrower entered into a further extension (the "2015 Loan Agreement," attached hereto as **Composite Exhibit F**.). The Parties acknowledged therein that Borrower then owed Plaintiff $55,218,820 under all pre-existing loan agreements. The purpose of the 2015 Loan Agreement was to increase the line of credit available to Borrower to up to $110 million, which would include the approximately $55 million of loans then outstanding. The 2015 Loan Agreement represented yet another extension of the Original Loan Agreement.

17.    The 2015 Loan Agreement further provides:

    (i)    **Loan**: The 2015 Loan Agreement has a maximum available credit limit of $110 million (Clause 1), to be drawn down in one amount upon the date of signing, documented by means of a promissory note in favor of the Plaintiff (the "**VMSC Promissory Note**") (Clause 2).

    (ii)    **Accelerated repayment**: [Plaintiff] may accelerate repayment of the 2015 Loan Agreement following an event of default, which includes, but is not limited to, the failure of Borrower to make any repayment of principal, interest, fees or charges (Clause 10). This is separate from and in addition

to any further right to claim repayment where a default has not been cured within 10 days of notice of default (Clause 5).

(iii) **Restrictions and information rights**: Borrower was required to perform certain obligations in favor of Plaintiff, and Plaintiff was granted certain information rights, which continue until the loan is repaid among which, without limitation (Clause 9):

a) Borrower will provide Plaintiff with quarterly accounts within 45 days of the end of each quarter (Clause 9(a)) and audited financial statements within 120 days of the end of each financial year (Clause 9(b));

b) Borrower will provide Plaintiff with "non-confidential information about its business and financial position when reasonably requested by Caterpillar" (Clause 9(c));

c) Borrower may not merge or be consolidated with another entity, nor acquire property or assets, in whole or in part, from another entity (Clause 9(h));

d) Borrower shall not participate in transactions with subsidiaries, affiliated companies or shareholders, except for transactions in the ordinary course of business (Clause 9(j));

e) Borrower will not pay dividends or make any other cash distributions to its shareholders without the prior written approval of Cat Crédito, until the outstanding balance of the loan is less than US$50 million (Clause 9(m); and

    f)  Borrower will not establish or acquire any subsidiaries or branches or transfer its material assets to any subsidiary or branch (Clause 9(o)).

18. The VMSC Promissory Note, appended to the 2015 Loan Agreement, provides in relevant part:

  (i) **Repayment**: The 2015 Loan Agreement was to be repaid according to a schedule of payment dates and interest payment dates, according to which the loan was to be fully repaid by October 2020 (Clauses 4 and 5).

  (ii) **Interest**: The unpaid principal amount shall bear interest at a fixed annual rate of 8.4%, payable monthly. Default interest was to be calculated at a rate of 17.4% (Clause 4).

  (iii) **Due and payable**: If a principal sum or interest is not paid immediately, the total amount of outstanding principal and interest shall become immediately due and payable, without the need for any action or legal proceedings (Clause 5).

  (iv) **No set-off**: All payments must be made without consideration for any rights of set-off or counterclaim (Clause 6).

  (v) **Waiver of right**: Borrower waives any claim, opposition, and any other notification with regard to the 2015 Loan Agreement (Clause 19).

**4. THE CORPORATE GUARANTEE**

19. The purpose of the Corporate Guarantee was to: "secure payment of each and every present and future obligation arising from the (Original) Loan Agreement." The Corporate Guarantee expressly remains in force if "(Plaintiff) renews, expands or changes the terms or the secured obligations." (Clause 3)

20. The Defendant Corporate Guarantors and others represented, among other things:

(a) This Guarantee constitutes a legal, valid, and enforceable obligation against each Guarantor…and the submission of documents or recording of this Guarantee are not necessary for its enforceability (Representation c));

(b) "under the terms hereof, their intention is to secure, without limitation, jointly and severally, and irrevocably, the full and timely payment of all of Borrower's present or future obligations under the Loan Agreement and the promissory notes or instruments documenting the loan provisions, whether such payment is for principal, interest, fees, expenses, or of any other nature, including but not limited to any obligations arising from current or future provisions under the Loan Agreement (hereinafter the "Secured Obligations") (Representation (g));

(c) "Guarantors, by executing this Guarantee, in their capacity as Guarantors, jointly and severally, unconditionally, and irrevocably secure in favor of Caterpillar the full and timely performance of any and all Secured Obligations, when they become due and payable (whether upon their due date or as a result of acceleration) to the extent allowed under applicable law. Guarantor's obligations under this Guarantee are unconditional and irrevocable and for the full amount of the Secured Obligations, as if each Guarantor were, as an individual, the primary obligor and not a guarantor (Clause 1);

(d) Guarantors shall immediately perform all Secured Obligations arising from or in relation to Borrower's default due to any reason, as well as any and all costs and expenses, including but not limited to attorneys' fees and expenses incurred by Caterpillar when enforcing or attempting to enforce this Guarantee." (Clause 1);

(e) Payment: All payments made pursuant to the Corporate Guarantee shall be paid by the Corporate Guarantors without any deductions for compensation or counterclaims and free from any taxes or other levies (Clause 2);

(f) The Corporate Guarantee will remain in force regardless of whether Plaintiff renews, expands or changes the terms and conditions of the Secured Obligations or does not demand performance of the Secured Obligations (Clause 3);

(g) The Corporate Guarantors expressly waive any notice of acceptance of the Corporate Guarantee by Plaintiff, any notice of the existence, creation, or non-payment of all or part of Borrower's obligations, any filing, claim, proceeding, opposition or notice of default, of non-payment, or of any other breach with respect to Borrower's obligations, and waives any other defense to payment (other than payment itself) (Clause 4). A failure by Plaintiff to call on the Corporate Guarantee does not amount to a waiver (Clause 8).

21. By virtue of the Corporate Guarantee, VMSC Miami is legally obligated to repay the Plaintiff the entire sum outstanding under the 2015 Loan Agreement, including but not limited

to interest, default interest, and other fees costs and expenses incurred by Cat Crédito in seeking repayment thereunder, which as of the date of suit exceeds $120 million.

### 5. NOTICES OF DEFAULT UNDER THE 2015 LOAN AGREEMENT AND THE CORPORATE GUARANTEE

22. On October 11, 2016, the Plaintiff and Borrower entered into an amendment to the 2015 Loan Agreement (attached hereto as **Composite Exhibit G**). The primary purpose of this amendment was to provide the Borrower with a 12-month grace period for repayment of certain accruing interest payments. (Clause 3.)

23. Payments due under the 2015 Loan Agreement and the VMSC Promissory Note due as of October and November 2017 were not timely remitted, constituting an event of default.

24. On or around December 15, 2017, Cat Crédito sent a Notice of Default to the Borrower ("Notice to Borrower," attached hereto as **Exhibit H**) under the 2015 Loan Agreement. The Notice to Borrower expressly referenced the fact that the Borrower had missed three (3) installments (October, November and December 2017) and demanded that all outstanding payments be made within ten (10) days. The Notice to Borrower further stated that if such payment was not received in full by December 26, 2017, the total unpaid balance would become due and payable. Cat Crédito further reserved the right to take legal action against the Borrower without further notice.

25. Cat Crédito notified VMSC Miami by letter dated December 28, 2017 (attached hereto as **Exhibit I**) of the Borrower's default and demanded payment of all amounts due under the 2015 Loan Agreement and Corporate Guarantee.

26. To date, Cat Crédito has received no payments from the Borrower, or any of the Corporate Guarantors, including Defendant VMSC Miami.

**6.     OTHER BREACHES OF THE 2015 LOAN AGREEMENT**

27.     In addition to the aforementioned payment default, the Borrower also defaulted under the 2015 Loan Agreement by its failure to provide certain required fiscal information.

28.     The Borrower has failed to provide Plaintiff with copies of its quarterly financial statements and annual audited financial statements since at least 2018. (See 2015 Loan Agreement, Sections 9(a) and 9(b).)

29.     Further, the Borrower has participated in transactions with and/or transferred substantial assets to shareholders and/or affiliates. (See 2015 Loan Agreement, Sections 9(j) and 9(o).) In particular:

   (i)    At the time that the 2015 Loan Agreement was executed in October 2015, the Plaintiff understood that the Borrower was the sole shareholder in Solidus and that these shares constituted a material asset of the Borrower;

   (ii)   However, since at least January 2021, a 33% stake in Solidus has been owned by Capellier Limited, which is an entity owned by and/or affiliated with Bellosta; and

   (iii)  The Borrower therefore transferred an asset to a shareholder (through its related party) and/or affiliate of VMSC Curacao, in violation of the covenants set forth in the 2015 Loan Agreement.

**CLAIMS**

**COUNT I (BREACH OF CONTRACT)**

30.     Cat Crédito repeats and realleges each and every allegation contained in paragraphs 1-29 above as if fully set forth herein.

31.     The Parties entered into a written enforceable contract – the Corporate Guarantee.

32. VMSC Miami has materially breached its contractual obligations by failing to make the required payments of principal, interest, default interest and other fees and charges due and owing to Plaintiff under the 2015 Loan Agreement, the VMSC Promissory Note and the Corporate Guarantee, among other defaults set forth herein.

33. There is no legal excuse or justification for the Defendant's non-performance.

34. As a direct result of the Defendant's breach, Plaintiff has suffered, and will continue to suffer significant monetary damages, including without limitation, principal, interest, default interest, late charges, acceleration premiums, attorney's fees, costs, and other reasonable expenses which totals in excess of $120 million.

**WHEREFORE** the Plaintiff, Cat Crédito, S.A., respectfully demands judgment against the Defendant VMSC Miami for breach of the Corporate Guarantee and for damages to be determined at trial in excess of $120 million, as well as attorney's fees, costs and expenses in enforcing its rights under the Corporate Guarantee and related loan documents, as well as any such further relief deemed just and proper.

Respectfully submitted,

Buchanan Ingersoll & Rooney PC
One Biscayne Tower
Two South Biscayne Blvd, Suite 1500
Miami, FL 33131-1822
Peter Russ (peter.russ@bipc.com)
Florida Bar No. 486329
Mark Kornfeld (mark.kornfeld@bipc.com)
Florida Bar No. 1019233
Lauren Humphries (lauren.humphries@bipc.com)
Florida Bar No. 117517
Kyle Roberts (kyle.roberts@bipc.com)
Florida Bar No. 118401

By      /s/ *Kyle S. Roberts*
            Kyle Roberts, Esq.
            Florida Bar No. 118401