**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

|  |  |
|---|---|
| CATERPILLAR CRÉDITO, S.A. DE S.V., SOCIEDAD FINANCIERA DE OBJETO MÚLTIPLE, E.R., <br><br>                 Plaintiff, <br><br> v. <br><br> VENEQUIP MACHINERY SALES CORPORATION, <br><br>                 Defendant. | CASE NO. 1:22-cv-23009-JEM |

**DEFENDANT VENEQUIP MACHINERY SALES CORPORATION'S MOTION TO DISMISS COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... iv

FACTUAL BACKGROUND ...................................................................................................2

ARGUMENT .........................................................................................................................6

I.      DISMISSAL IS APPROPRIATE BASED ON *FORUM NON-CONVENIENS*. ...............6

       A.    The Curaçao Forum is Available and Adequate. .................................................. 6
       B.    The Private and Public Interest Factors Weigh in Favor of Dismissal. ................. 7

           1.    The Private Interest Factors Weigh in Favor of Dismissal. ....................... 7
           2.    The Public Interest Factors Weigh in Favor of Dismissal. ........................ 9

       C.    There is No Prejudice or Undue Inconvenience to Plaintiff to Refile This
           Suit. ................................................................................................................ 10

II.     THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE
     THE CORPORATE GUARANTEE IS NOT A VALID AND ENFORCEABLE
     CONTRACT UNDER MEXICAN LAW. .......................................................................11

       A.    Basic Principles Regarding a Guarantee Under Mexican Law........................... 12
       B.    The Corporate Guarantee is Invalid and Unenforceable..................................... 12

           1.    The 2007 Corporate Guarantee was Terminated by Express
              Consent. ........................................................................................... 12
           2.    The Corporate Guarantee was Terminated by Novation. ......................... 13
           3.    The Survival Clause Does Not Create Future Obligations. ...................... 15
           4.    The Corporate Guarantee Cannot be Enforced While the Original
              Loan Agreement is at Issue in the Curacao Proceeding. ......................... 16
           5.    VMSC Miami Did Not Consent to Guarantee the Debts in the
              Amendments or the 2015 Loan Agreement. ............................................ 16

III.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE OR
     STAYED PURSUANT TO THE DOCTRINE OF INTERNATIONAL
     ABSTENTION. .........................................................................................................17

       A.    This Case and the Curaçao Proceeding are Parallel........................................... 17
       B.    International Abstention is Appropriate............................................................. 18

           1.    International Comity Favors Dismissing or Staying this Case. ................. 18
           2.    Fairness to Litigants Favors Dismissing or Staying this Case ................. 19
           3.    Efficient Use of Scarce Judicial Resources Favors Abstention. ............... 19

IV.     IN THE ALTERNATIVE, THIS COURT SHOULD STAY THIS CASE
PURSUANT TO ITS POWER TO CONTROL ITS OWN DOCKET. ............................20

CONCLUSION..............................................................................................................................20

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*In re Application of Caterpillar Crédito et al,*
Case No. 22-CV-01549-JLR (W.D. Wash. Nov. 16, 2022) .......................................5

*Belize Telecom, Ltd. v. Gov't of Belize,*
528 F.3d 1298 (11th Cir. 2008) .......................................................................18, 19

*Bello v. Caterpillar Inc.,*
No. 17-22326-CIV-ALTONAGA/Goodman, 2017 U.S. Dist. LEXIS 176865
(S.D. Fla. 2017)..................................................................................................9

*Blue Ocean Corals, LLC v. Phoenix Kiosk, Inc.,*
No. 14–CIV–61550, 2014 WL 4681006 (S.D. Fla. Sept. 19, 2014) .........................6

*Caterpillar Financial Services Corp. v. Venequip Machinery Sales Corp.,*
Case No. 22-cv-23002-RNS ...............................................................................5

*Del Monte Fresh Produce Co. v. Dole Food Co., Inc.,*
136 F. Supp. 2d 1271 (S.D. Fla. 2001) ................................................................7

*Finova Capital Corp. v. Ryan Helicopters U.S.A, Inc.,*
180 F.3d 896 (11th Cir. 1999) .......................................................................17, 18

*Ford v. Brown,*
319 F.3d 1302 (11th Cir. 2003) .....................................................................9, 11

*Gilbert,*
330 U.S. 501 (1947)...........................................................................................8

*Horberg v. Kerzner Int'l Hotels Ltd.,*
744 F. Supp. 2d 1284 (S.D. Fla. 2007) ...............................................................8

*Jiangsu Hongyuan Pharm. Co. Ltd v. DI Global Logistics Inc.,*
159 F. Supp. 3d 1316 (S.D. Fla. 2016) .............................................................6, 7

*King v. Cessna Aircraft Co.,*
562 F.3d 1374 (11th Cir. 2009) .....................................................................6, 7, 9

*Kitaru Innovations Inc. v. Chandaria,*
698 F.Supp.2d 386 (S.D.N.Y. 2010)....................................................................7

*Landis v. N. Am. Co.,*
299 U.S. 248 (1936)..........................................................................................20

*Locke v. Warren,*
No. 19-61056-CIV-ALTMAN, 2019 WL 4805716 (S.D. Fla. Oct. 1, 2019)..........5

*Luxor Agentes Autonomos de Investimientos, LTDA. V. Oliveira,*
No. 13–CV–20806–WILLIAMS, 2014 WL 11878426 (S.D. Fla. 2014)...............11

iv

*Lyon Fin. Servs., Inc. v. Bella Medica Laser Ctr., Inc.*,
   738 F.Supp.2d 856 (N.D. Ill. 2010) .......................................................................... 14

*Miccosukee Tribe of Indians of Florida v. South Florida Water Mgmt. Dist.*,
   559 F.3d 1191 (11th Cir. 2009) ................................................................................ 20

*Morse v. Sun Int'l Hotels Ltd.*,
   No. 98-7451-CIV-JORDAN, 2001 U.S. Dist. LEXIS 23488 (S.D. Fla. Feb.
   26, 2001) ................................................................................................................. 8, 10

*In re Murchison*,
   102 B.R. 545 (Bankr. N.D. Tex. 1988) ..................................................................... 15

*Nygard v. Dipaolo*,
   No.: 0:17-cv-60027-UU, 2017 U.S. Dist. LEXIS 215088 (S.D. Fla. 2017),
   *aff'd*, 753 Fed. Appx. 716 (11th Cir. 2018) .............................................................. 7, 8

*Peoples Nat'l Bank, Clay Center, Kan. v. Purina Mills, Inc.*,
   931 F.Supp. 1525 (D. Kan. 1996) ............................................................................ 14

*Pierre-Louis v. Newvac Corp.*,
   584 F.3d 1052 (11th Cir. 2009) ............................................................................... 6, 9

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ................................................................................................. 10

*Posner v. Essex Ins. Co.*,
   178 F.3d 1209 (11th Cir. 1999) ............................................................................... 18

*Risk Ins. & Reinsurance Solutions v. R+*,
   No. 04-61119-CIV-SEITZ/MCALILEY, 2006 U.S. Dist. LEXIS 111362 (S.D.
   Fla. Jan. 17, 2006) ................................................................................................... 18

*Satz v. McDonnell Douglas Corp.*,
   244 F.3d 1279 (11th Cir. 2001) ................................................................................. 7

*Seguros Universales, S.A. v. Microsoft Corp.*,
   32 F.Supp.3d 1242 (S.D. Fla. 2014) ........................................................................ 10

*St. Martinus Univ., NV v. Caribbean Health Holding, LLC*,
   No. 19-22278-CIV-ALTONAGA/Goodman, 2020 WL 956301 (S.D. Fla.
   2020) ................................................................................................... 9, 10, 18, 19

*Tazoe v. Airbus S.A.S.*,
   631 F.3d 1321 (11th Cir. 2011) ............................................................................... 10

*Trinidad Foundry and Fabricating, Ltd. v. MN K.A.S. Camilla*,
   966 F.2d 613 (11th Cir. 1992) ................................................................................. 11

*Trujillo v. Conover & Co. Communs., Inc.*,
   221 F.3d 1262 (11th Cir. 2000) ............................................................................... 20

*Turner Entm't Co. v. Degeto Film*,
   25 F.3d 1512 (11th Cir. 1994) ............................................................... 17, 18, 19, 20

*Velarde v. HSBC Private Bank Intern*,
    No. 13–22031–CIV, 2013 WL 5534305...........................................................................18, 20

*Venequip v. Mustang Mach. Co.*,
    No. 4:21-MC-2391, 2022 WL 3951173 (S.D. Tex. 2022) ........................................................2

**STATUTES**

10 U.S.C. § 1794.........................................................................................................................15

10 U.S.C. § 2213.........................................................................................................................13

10 U.S.C. § 2220.....................................................................................................................13, 14

10 U.S.C § 2826..........................................................................................................................14

12 U.S.C. § 1824.........................................................................................................................15

22 U.S.C. § 1797.........................................................................................................................12

22 U.S.C. § 2794.........................................................................................................................12

29 U.S.C. § 2842.....................................................................................................................13, 14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 44.1....................................................................................................................11

Restatement (Third) of Suretyship & Guaranty § 41 (1996) .......................................................14

Approximately seven months before filing this lawsuit against defendant Venequip Machinery Sales Corporation ("VMSC Miami"), plaintiff Caterpillar Crédito, S.A. de C.V., Sociedad Financiera de Objeto Múltiple, E.R. ("CAT") filed suit in Curaçao based on the same facts and agreements that form the basis of this action ("Curaçao Proceeding"). Compl. at 4, n. 1. The Curaçao Proceeding is ongoing and the precise issues that CAT raises here are already pending resolution in Curaçao. CAT now improperly seeks a second bite at the apple, inviting this Court to spend resources on a matter that can be more conveniently litigated in Curaçao.

Further, CAT alleges a breach of guarantee against VMSC Miami even though that guarantee is unenforceable under the governing law of Mexico. CAT claims that a guarantee that VMSC Miami executed in 2007 ("Corporate Guarantee") to secure payment on a 2007 loan agreement ("Original Loan Agreement") between CAT and VMSC Curaçao, N.V. ("VMSC Curaçao"), an affiliate of VMSC Miami, for about $4.9 million also secured payment for all future loan agreements between CAT and VMSC Curaçao, no matter how different those future loan agreements might be from the original agreement. Compl. ¶¶ 13-14. On this basis, CAT seeks, implausibly, to impose guarantee liability upon VMSC Miami in an amount that is more than 2400 percent greater than the original, to the tune of $120 million, although the original guarantee obligation never was amended.

The Complaint should be dismissed on several grounds. First, this Court should dismiss based on *forum non-conveniens* because: (1) an adequate alternate forum exists, namely, Curaçao, where litigation between the parties on the exact same matters at issue here has been proceeding for the better part of a year; (2) the private and public interests weigh in favor of adjudicating the case in Curaçao – a forum that is already well versed with the issues at hand; and (3) having already filed suit against VMSC Curaçao and the other Corporate Guarantors in Curaçao, Plaintiff easily can reinstate its suit in Curaçao without undue hardship or prejudice.

Second, this Court should dismiss the Complaint because the Corporate Guarantee is unenforceable against VMSC Miami under the governing Mexican law because: (1) CAT and VMSC Curaçao entered into a subsequent 2015 Loan Agreement that expressly terminated prior agreements, including the Original Loan Agreement and thus the Corporate Guarantee; (2) CAT and VMSC Curaçao terminated the Original Loan Agreement—and necessarily the 2007 Corporate Guarantee—by way of novation when they materially altered the obligations under the Original Loan Agreement through several amendments; (3) the "survival clause" in the

1

Corporate Guarantee that Plaintiff claims binds VMSC Miami to the obligations of the amendments to the Original Loan Agreement is inapplicable; (4) the enforceability of the Original Loan Agreement is at issue in the Curacao Proceeding, which means that the Corporate Guarantee is not enforceable; and (5) VMSC Miami is not a party to the 2015 Loan Agreement nor did it enter into any agreement to secure the obligations under the 2015 Loan Agreement.

Finally, given that the pending case in Curaçao and this case tee up the same issues (*i.e.*, alleged breach of the 2015 Loan Agreement and the enforceability of the Corporate Guarantee) and involve CAT and VMSC Miami's affiliates (who also acted as guarantors under the Corporate Guarantee), this Court should dismiss or stay this case under the international abstention doctrine and/or this Court's inherent authority to stay cases.

## FACTUAL BACKGROUND

**The underlying business relationship between the parties.** Non-party Venequip S.A. distributed, sold, and serviced Caterpillar equipment in Venezuela. *See Venequip v. Mustang Mach. Co.*, No. 4:21-MC-2391, 2022 WL 3951173 at \*1 (S.D. Tex. 2022). To finance Venequip S.A.'s purchase of the equipment, CAT, a Mexican subsidiary of Caterpillar Inc.'s subsidiary Caterpillar Financial Services Corporation ("CFSC"), entered into loan agreements with VMSC Curaçao.

**The Original Loan Agreement.** In May 2007, VMSC Curaçao and CAT entered into the Original Loan Agreement. Compl. ¶ 13. Under the Original Loan Agreement, CAT provided a loan to VMSC Curaçao for up to $4,869,229.53. *Id*.; Ex. A to Compl.; English translation of Ex. A to Compl. attached hereto as **Exhibit 1.** The parties agreed that the purpose of the loan was to fund VMSC Curaçao's "rental fleet and working capital" and that VMSC Curaçao could draw on the loan through July 31, 2007. Ex. 1, p. 3, Recital II.

**The 2007 Corporate Guarantee.** To secure VMSC Curaçao's payment on the Original Loan Agreement, VMSC Miami, Venequip S.A., a Venezuelan affiliate of VMSC Miami, VMSC Curaçao, and Venequip S.A. Limited, a Barbados company (now Solidus Investments Corporation, and collectively the "Corporate Guarantors") executed the Corporate Guarantee in CAT's favor. Compl. ¶ 14 & Composite Ex. B. The Corporate Guarantors agreed to guarantee VMSC Curaçao's obligations under the Original Loan Agreement. *Id*. at Ex. B p. 10, Recitals I-II.  The Corporate Guarantee is governed by Mexican law. *Id*. at Ex. B p. 14, Section 11(a).

Nowhere does the Corporate Guarantee agree to repay any future obligations or additional indebtedness that VMSC Curaçao may assume under any other loan agreement or owe to CAT.

**First Amendment to the Original Loan Agreement.** On June 7, 2012, VMSC Curaçao and CAT entered into a First Amendment to the Original Loan Agreement ("1st Amendment"). Compl. ¶ 15(a) & Ex. C; English Translation of Ex. C to Compl. attached as **Exhibit 2**. The parties: (1) substantially increased the loan amount agreed to in the Original Loan Agreement from $4,869,229.53 to $55,000,000.00; (2) amended the draw period to November 30, 2012; and (3) amended the purpose of the Original Loan Agreement so that VMSC Curaçao could use the loan to fund its "rental fleet and/or inventory indistinctly according to the needs of the Borrower." Compl. ¶ 15(a); Ex. 2 at 1-2, Recital I.A, Clauses II-III. Mexican law governs the First Amendment. Ex. 2 p. 3, Clause VI.

The guarantors of the Original Loan Agreement are not parties to the 1st Amendment. Compl. at Ex. B p. 10; Ex. 2 at 1, 4. Nor does CAT allege the Corporate Guarantors: (i) ever reviewed or even saw the 1st Amendment; (ii) agreed to guarantee the 1029.54% increased debt obligation VMSC Curaçao undertook via the 1st Amendment; or (iii) otherwise agreed to guarantee it.

**Second Amendment to the Original Loan Agreement.** Several days later, on June 19, 2012, VMSC Curaçao and CAT entered into a Second Amendment to the Original Loan Agreement ("2d Amendment"). Compl. ¶ 15(b) & Ex. E; English translation of Ex. E to Compl. attached as **Exhibit 3**. The parties thereto: (1) substantially increased the loan amount agreed in the 1st Amendment, from $55,000,000.00 to $68,000,000.00; and (2) amended the draw period in the 1st Amendment to June 19, 2012 to November 30, 2012. *Id*. ¶ 15(b); Ex. 3 at 2-3, Recitals I.A-I.B & Clauses II-III. Mexican law governs the 2d Amendment. Ex. 3 at 3, Clause VI.[1]

Again, the guarantors of the Original Loan Agreement are not parties to the 2d Amendment. Compl. at Ex. B p. 10; Ex. 3 pp. 2, 4. Nor does CAT allege that the Corporate Guarantors: (i) ever reviewed or even saw the 2d Amendment; (ii) agreed to guarantee the 23.64% increased debt obligation that VMSC Curaçao undertook via the 2d Amendment as compared to the 1st Amendment; and/or (iii) otherwise agreed to guarantee it in any way.

---

[1] CAT alleges that the parties entered into a Third Amendment to the Original Loan Agreement on November 27, 2013 ("3d Amendment"). CAT states this so-called "VMSC Promissory Note" is attached as Exhibit E, but Exhibit E is a copy of the 2d Amendment. For purposes of this Motion, however, Defendant considers as true CAT's

**The 2015 Loan Agreement.** On October 13, 2015, VMSC Curaçao and CAT entered into the 2015 Loan Agreement. Compl. ¶ 16 & Ex. G (English translation at Ex. F, pp. 9-21). Under the 2015 Loan Agreement, CAT provided a loan to VMSC Curaçao for up to a principal amount of $110,000,00.00. *Id*. at Ex. F p. 11, Clause I. The parties agreed the purpose of the loan was for VMSC Curaçao's "payment of outstanding liabilities as of the execution date of th[e] agreement." *Id*. at 11, Clause II.

For purposes of this motion, several provisions in the 2015 Loan Agreement are of particular importance. First, relevant to VMSC Miami's *forum non conveniens* argument are the various provisions that center the 2015 Loan Agreement in Curaçao, including: (1) Clause 17: Curaçao law governs; (ii) Clause 18: submission to the exclusive jurisdiction of the courts of Willemstad, Curaçao, Dutch Caribbean; and (iii) Clause 16: notices to VMSC Curaçao are to be sent to a Curaçao address. Compl. at Ex. F p. 17.

Second, relevant to VMSC Miami's position that it is not bound to guarantee the debt incurred under the 2015 Loan Agreement is that the parties agreed that the 2015 Loan Agreement superseded all prior agreements and understandings between them. Clause 20 states in relevant part that the 2015 Loan Agreement "replaces all contracts, amendments, and any other prior understanding, whether written or oral, between Caterpillar and Borrower with respect to the matters stipulated in this loan agreement." Compl. at Ex. F, p. 18, Clause 20. Moreover, the funds loaned under the 2015 Loan Agreement were to be used to extinguish prior indebtedness: "Borrower shall use the Loan for payment of outstanding liabilities as of the date of signature of this agreement." *Id*. at 11, Clause 2.

Once again, the guarantors of the Original Loan Agreement are not parties to the 2015 Loan Agreement. Compl. at Ex. B p. 10 & at Ex. F pp. 11, 18. Nor does CAT allege that the Corporate Guarantors: (i) ever reviewed or even saw the 2015 Loan Agreement; (ii) agreed to guarantee the over 2,400% increased debt obligation that VMSC Curaçao undertook via the Original Loan Agreement; and/or (iii) otherwise agreed to guarantee it in any way.

**Mr. Bellosta's Guarantee of the 2015 Loan Agreement**. Although CAT did not seek or obtain the agreement of VMSC Miami and the other guarantors to back up the 2015 Loan Agreement, it alleges that it obtained someone else's guarantee of this obligation. CAT alleges

---

allegations and notes that Plaintiff alleges the 3d Amendment increased the principal amount under the 2d Amendment to $99,037,153.47. Compl. ¶ 15(c).

that on October 16, 2015, Carlos Bellosta Pallares ("Mr. Bellosta") executed a guarantee through which he guaranteed repayment of the 2015 Loan Agreement. Compl. at Ex. G, p. 15, Recital b.

**Amendment to the 2015 Loan Agreement.** On October 11, 2016, VMSC Curaçao and CAT entered into an Amending Agreement to the 2015 Loan Agreement ("2015 Amending Agreement"). Compl. ¶ 22 & Ex. G. The primary purpose of the 2015 Amending Agreement was to provide VMSC Curaçao with additional time to repay certain interest payments owed to CAT. *Id*. ¶ 22. The Corporate Guarantors, including VMSC Miami, were not parties to the 2015 Amending Agreement nor did they in any way consent to guarantee it. *Id.* at Ex. G, pp. 15, 21.

Notably, according to CAT, it made sure that Mr. Bellosta was bound by the amendment – a step it did not take as to VMSC Miami and the other guarantors with respect to any of the agreements executed after the Original Loan Agreement. In Section 8 of the 2015 Amending Agreement, Mr. Bellosta "expressly consent[ed]" to the amendments embodied in the 2015 Amending Agreement. Compl. at Ex. G, p. 20. He also executed the 2015 Amending Agreement in his personal capacity as guarantor.[2] *Id*. at 21.

**The Curaçao Proceeding.** Prior to filing this action, on February 24, 2022, CAT initiated litigation against VMSC Miami's two co-guarantors to the Original Loan Agreement, Venequip S.A. and Venequip S.A. Limited, in the Court of First Instance of Curaçao. Compl. at 4, n.1. The Curaçao Proceeding is based on "[the guarantors'] breaches of the [2007] Corporate Guarantee and related loan documents." *Id*.; *see* Declaration of Ursus Van Bemmelen ("Van Bemmelen Decl."), attached as **Exhibit 4**, ¶¶ 4-5. The complaint in the Curaçao Proceeding parallels the complaint in this case. *Id*. ¶¶ 4-5, 7-8. In a closely-related action CFSC filed against VMSC Miami in this district court on the same date as this action, CAT's parent company describes the Curaçao Proceeding, making clear that it involves the same allegations, same claims, same relief, and virtually the same parties as in this case. *See Caterpillar Financial Services Corp. v. Venequip Machinery Sales Corp*., Case No. 22-cv-23002-RNS, Compl. ¶¶ 7-

---

[2] On February 4, 2022, Caterpillar Crédito filed a request for arbitration before the International Chamber of Commerce ("ICC") against Mr. Bellosta (the "ICC Arbitration"). *In re Application of Caterpillar Crédito et al*, Western District of Washington, Case No. 22-CV-01549-JLR, D.E. 1 at 2-3; *see also* Case No. 22-MC-00075-RSL at DE. 1-4, Productie 8, Request for Arbitration, at 61-79. In the ICC Arbitration, Caterpillar Crédito: (1) claims in 2015 and 2016, Mr. Bellosta issued two personal guarantees to secure payment obligations under the 2015 Loan Agreement; and (2) asserts claims to enforce those guarantees to recover under the 2015 Loan Agreement. *Id*. In other words, Caterpillar Credito is already seeking redress in a third action and jurisdiction for amounts it claims are owed under the 2015 Loan Agreement, which it is also seeking here (and in Curacao). On a motion to dismiss, this Court may take judicial notice of facts in public court records like these filings, and the others referenced in this Motion. *Locke v. Warren*, No. 19-61056-CIV-ALTMAN, 2019 WL 4805716 at *6, n. 1 (S.D. Fla. Oct. 1, 2019).

19. Essentially, Plaintiff filed what is one action against the guarantors of the Original Loan Agreement in two different jurisdictions. Unlike in this case, the evidence gathering process has begun in Curaçao, and the factual and legal issues concerning these agreements are already before the Curaçao court. *See* Van Bemmelen Decl. ¶¶ 9-13, 15.

**This Action.** Despite the parallel Curaçao Proceeding, Plaintiff filed this action. However, all of the evidence for this case is located outside of this jurisdiction, including hard copies of documents, servers, and computers, which are located in Curaçao, and most of the witnesses, who are located between Curaçao and Venezuela. S*ee see also* Declaration of Agustin D'Onghia ("D'Onghia Declaration") at ¶ 14, attached as **Exhibit 5.**

ARGUMENT

I.   **DISMISSAL IS APPROPRIATE BASED ON *FORUM NON-CONVENIENS*.**

This Court should dismiss the Complaint under the doctrine of *forum non conveniens*. Under this doctrine, a court can decline to exercise jurisdiction when the parties' and the court's convenience, and relevant public and private interests, weigh in favor of the action being tried in a different forum. *See Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052, 1056 (11th Cir. 2009). The Court should dismiss where the following factors are satisfied: (a) an adequate alternative forum is available; (b) private and public interest factors favor the alternative forum; (c) the plaintiff can refile its suit in an alternative forum without undue inconvenience or prejudice. *Id.* at 1058-59. In resolving a motion to dismiss for *forum non conveniens*, this Court may consider matters outside the pleadings. *See Blue Ocean Corals, LLC v. Phoenix Kiosk, Inc.*, No. 14–CIV–61550, 2014 WL 4681006 at *3 (S.D. Fla. Sept. 19, 2014). These factors are satisfied.

A.   **The Curaçao Forum is Available and Adequate.**

There is no question that Curaçao is an adequate and available forum: CAT has already filed the Curaçao Proceeding, and VMSC Miami consents to the Curaçao Court's jurisdiction.

An alternative forum is "available" to a plaintiff "when the foreign court can assert jurisdiction over the litigation sought to be transferred." *Jiangsu Hongyuan Pharm. Co. Ltd v. DI Global Logistics Inc.*, 159 F. Supp. 3d 1316, 1332 (S.D. Fla. 2016). This factor is satisfied when the defendant is amenable to process in the other jurisdiction. *See King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1382 (11th Cir. 2009) (forum available where defendants agreed to submit to the jurisdiction of Italian court); *Jiangsu*, 159 F.Supp.3d at 1332 (same – China). As in in *King* and

*Jiangsu*, Curaçao is an available forum because VMSC Miami consents to submit to the jurisdiction of Curaçao and is amenable to process there. *See* D'Onghia Decl. at ¶ 17.

"An alternative forum is adequate if it provides for litigation of the subject matter of the dispute and potentially offers redress for plaintiffs' injuries." *King*, 562 F.3d at 1382. "An adequate forum need not be a perfect forum." *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001). The Court need only ask "whether some remedy exists; whether the remedy afforded is less favorable in the foreign forum is not determinative." *Jiangsu*, 159 F.Supp.3d at 1329 (internal quote omitted). Here, by filing suit in Curaçao against VMSC Miami's co-guarantors based on the same facts and loan documents at issue in this action, CAT effectively has conceded that the Court of First Instance of Curaçao is an adequate forum. *See Kitaru Innovations Inc. v. Chandaria*, 698 F.Supp.2d 386, 394 (S.D.N.Y. 2010) (progress of a parallel Canadian action "plainly indicated that Canadian courts 'permit [] litigation of the subject matter of the dispute'"; finding by filing the Canadian action, defendants conceded Canada was an adequate alternate forum). Moreover, Curaçao courts are open and functioning normally; Plaintiff's contract claim is cognizable under Curaçao law; Curaçao provides remedies for Plaintiff's alleged injuries; and a Curaçao court is competent to apply governing Mexican law and adjudicating the matter, which it is *already* doing in the Curaçao Proceeding. *See* Van Bemmelen Decl. ¶¶ 14, 16-18. Thus, the first *forum non conveniens* factor is satisfied.

**B.      The Private and Public Interest Factors Weigh in Favor of Dismissal.**

If an adequate and available forum exists, as it does here, this Court then must determine whether the relevant and non-exclusive factors of private and public interests in adjudicating the case in the alternative forum weigh in favor dismissal. *See King*, 562 F.3d at 1381. Courts are free to be flexible in responding to cases as they are presented. *Id.*

**1.      The Private Interest Factors Weigh in Favor of Dismissal.**

The private interest factors are those that affect the convenience of the litigants. *See Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1278-1279 (S.D. Fla. 2001). As an initial matter, judicial economy strongly weighs in favor of dismissing this case due to the existence of concurrent litigation. *See Nygard v. Dipaolo*, 753 Fed.Appx. 716, 726 (11th Cir. 2018) ("[C]oncurrent litigation can be a practical problem that is properly considered when balancing the private interest factors."). There is an active case pending in Curaçao that CAT itself initiated. Therefore, it would be far more convenient for the parties to resolve all their

claims in Curaçao, especially since the parties could then attempt to consolidate these cases before the Curaçaoan court. *Id.* (judicial economy due to pending parallel proceeding in the Bahamas favored dismissal); *Horberg v. Kerzner Int'l Hotels Ltd.*, 744 F. Supp. 2d 1284, 1294 (S.D. Fla. 2007) ("Because judicial economy favors resolution of all claims in one trial, [Plaintiffs'] chosen forum would be unduly burdensome and dismissal is warranted."). Allowing this case to proceed alongside the Curaçao Proceeding also would run the risk of inconsistent results—as both courts will decide the same issues, including the enforceability of the Corporate Guarantee under Mexican law. *See Nygard*, 753 Fed. Appx. at 727 (risk of inconsistent results properly can be given "some weight" in the private interest factors analysis; affirming dismissal for *forum non conveniens* due to "risk" of "opposite results"); *Morse v. Sun Int'l Hotels Ltd.*, No. 98-7451-CIV-JORDAN, 2001 U.S. Dist. LEXIS 23488, *17 (S.D. Fla. Feb. 26, 2001) (same).

Further, applying the private interest factors applicable when the alternative forum is abroad – comparative ease of access to sources of proof in the competing fora, availability of witnesses and compulsory process to compel their attendance, and the cost of obtaining evidence – the balance again weighs strongly in favor of adjudicating this dispute in Curaçao. *Gilbert*, 330 U.S. at 508-09. Here, there is minimal – if any – evidence relevant to the issues presented that is in Miami. The evidence is instead located outside of this jurisdiction, primarily in Curaçao: (1) the documentary evidence – VMSC Miami's servers, computers, and hard copy files – are located in Curaçao, and (2) most of VMSC Miami's witnesses are located in Curaçao and Venezuela. *See* D'Onghia Decl. at ¶¶ 14-16. Evidence related to the underlying 2015 Loan Agreement and the other Corporate Guarantors is in the hands of non-parties (*e.g.*, VMSC Curaçao) and is also located in Curaçao. *Id.* The only other conceivable witnesses in this case are those who have personal knowledge of the relevant loan documents and transactions. Because these are employees or representatives of CAT and VMSC Miami, compulsory process would not be needed to produce the parties' witnesses in Curaçao. *See Nygard v. Dipaolo*, No.: 0:17-cv-60027-UU, 2017 U.S. Dist. LEXIS 215088, *25 (S.D. Fla. 2017) (granting *forum non conveniens* dismissal because witnesses were in foreign forum or within parties' "control whose appearance could be compelled in the Bahamas."), *aff'd*, 753 Fed. Appx. 716 (11th Cir. 2018).

In addition, the Curaçao Proceeding, which commenced nearly a year ago, is further along than this action, where evidence specifically pertaining to the 2015 Loan Agreement and 2007 Corporate Guarantee has already been presented to the Curaçao court. *See* Van Bemmelen

Decl. at ¶¶ 9-13, 15. Given that the Curaçao Proceeding involves the same facts, contracts, cause of action, and relief as this case, the relevant evidence that the parties will use in this case will likely be the same evidence that will be used in the Curaçao Proceeding. As such, the parties will have easier access to relevant evidence in Curaçao than in Florida. *See St. Martinus Univ., NV v. Caribbean Health Holding, LLC*, No. 19-22278-CIV-ALTONAGA/Goodman, 2020 WL 956301 at *17-18 (S.D. Fla. 2020) (granting motion to dismiss on *forum non-conveniens* grounds in favor of Curaçao because "most of Plaintiff's allegations are virtually identical to those put before the Curaçao courts," and "[r]elevant evidence, including evidence pertaining to the Promissory Notes, has already been presented before the Curaçao courts.").Accordingly, the private interest factors weigh in favor of dismissal.

## 2.     The Public Interest Factors Weigh in Favor of Dismissal.

Public interest factors include each forum's interest in hearing the case, including comity concerns; the administrative burdens placed on the Court in hearing the case, such as court congestion and jury duty generated by the lawsuit; the desirability of having localized controversies decided at home; and the difficulty in determining applicable law and applying foreign law. *See Pierre-Louis*, 584 F.3d at 1061; *King*, 562 F.3d at 1384; *Ford v. Brown*, 319 F.3d 1302, 1309 (11th Cir. 2003). These factors also weigh strongly in favor of adjudicating this dispute in Curaçao.

As to administrative burdens, "because the Southern District of Florida is among the busiest district courts in the country, the Court has a strong interest in only adjudicating disputes to which the community has substantial ties." *Bello v. Caterpillar Inc.*, No. 17-22326-CIV-ALTONAGA/Goodman, 2017 U.S. Dist. LEXIS 176865, *19-20 (S.D. Fla. 2017) (citations omitted). "Consequently, the Court looks closely at whether this litigation has sufficient ties to Florida for both purposes of determining whether the case is an administrative burden as well as…an undue burden for a South Florida jury." *Id*. at 20.

Next, this litigation has *de minimis* ties to Florida. CAT is a Mexican plaintiff and is not at home in Florida where the controversies in this case would be decided. Compl. at ¶ 1. Additionally, VMSC Miami has agreed to submit itself to the jurisdiction of Curaçao, so that the issues concerning the Corporate Guarantee can be adjudicated in a single forum with the other non-U.S. Corporate Guarantors. D'Onghia Decl. at ¶ 17. Moreover, this is essentially a Curaçaoan matter. Not only did CAT file suit in Curaçao under the same nucleus of operative

9

facts, but the underlying 2015 Loan Agreement at issue in this case was agreed to in Curaçao and is governed by Curaçao law, making this case desirable to decide in Curaçao. Compl. at Composite Ex. F pp. 17-18; Van Bemmelen Decl. ¶¶ 5, 7. Thus, this "dispute bears little relation to this forum." *See Morse*, 2001 U.S. Dist. LEXIS 23488, *22-25.

As to the last factor, the Curaçao court is capable of determining and applying governing Mexican law, which it is already doing in the Curaçao Proceeding. *See Morse*, 2001 U.S. Dist. LEXIS 23488, *22-25 (relying upon *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260 n. 29 (1981), in determining that the need to apply foreign law weighs in favor of dismissal). Importantly, because the Curaçao Proceeding is ongoing, the Curaçao court is likely "much more familiar with Plaintiff's allegations than this Court" and it likely has a strong interest in continuing its jurisdiction over disputes that are already being litigated before it. *See St. Martinus University, NV*, 2020 WL 956301 at *17 (it was safe to assume that Curaçao has an interest in continuing its jurisdiction over disputes that are already being litigated in Curaçao). As such, the public interest factors all weigh in favor of dismissal and reinstatement of this action in Curaçao.

**C.      There is No Prejudice or Undue Inconvenience to Plaintiff to Refile This Suit.**

Finally, as established by the fact that CAT already filed suit in Curaçao under the 2007 Corporate Guarantee and the 2015 Loan Agreement, CAT can refile this claim in Curaçao without undue inconvenience or prejudice. Van Bemmelen Decl. at ¶ 19. The burden to satisfy this requirement is not onerous, as all that is typically required is that the defendant stipulate to the jurisdiction of the alternate forum and waive any statute of limitations defenses that may be available to it. *See, e.g., Seguros Universales, S.A. v. Microsoft Corp.*, 32 F.Supp.3d 1242, 1252 (S.D. Fla. 2014). As discussed above, VMSC Miami has agreed to submit to Curaçao's jurisdiction and accept service of process from its courts, waiving statute of limitations defenses, which agreement is by itself sufficient to support dismissal. *See Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1335 (11th Cir. 2011) (affirming dismissal on *forum non-conveniens* grounds where the defendants' stipulation to allow plaintiffs to refile "remove[d] any impediment to reinstatement"); D'Onghia Decl. at ¶ 17.   Further, the cost to refile suit in Curaçao is insignificant and most of the evidence is already conveniently in or readily accessible from

Curaçao (especially since it will be needed for the Curaçao Proceeding). *See supra* at Section I(B)(1); Van Bemmelen Decl. ¶ 19. As such, this last factor also weighs in favor of dismissal.[3]

## II.   THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE THE CORPORATE GUARANTEE IS NOT A VALID AND ENFORCEABLE CONTRACT UNDER MEXICAN LAW.

A separate and independent basis for dismissing the Complaint is that the guarantee at issue is invalid and unenforceable under the governing Mexican law.

In deciding a motion to dismiss, a district court may decide the issues before it based on applicable foreign law. *See, e.g.*, *Luxor Agentes Autonomos de Investimientos, LTDA. V. Oliveira*, No. 13–CV–20806–WILLIAMS, 2014 WL 11878426 at *4 (S.D. Fla. 2014) (court interpreted Brazilian law at motion to dismiss stage, where the issue before the court was "whether [p]laintiff, as a dissolved corporation, has the capacity under Brazilian law to maintain this action."). When making a determination of foreign law, a district court "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." *See* Fed. R. Civ. P. 44.1; *see also Trinidad Foundry and Fabricating, Ltd. v. MN K.A.S. Camilla*, 966 F.2d 613, 615 (11th Cir. 1992). As such, this Court may decide that the 2007 Corporate Guarantee is invalid and unenforceable under governing Mexican law.

To support its argument that the 2007 Corporate Guarantee is not valid and enforceable under Mexican law, VMSC Miami relies upon the opinion of Margarita Beatriz Luna Ramos, a retired Justice of the Mexican Supreme Court (2004-2019) (the "Ramos Decl."), which is attached hereto as **Exhibit 6**. In the Curaçao Proceeding, the other Corporate Guarantors likewise have submitted the opinion of Justice Ramos to support the same arguments regarding the 2007 Corporate Guarantee for the Curaçao Court's consideration.

---

[3] In the alternative, VMSC Miami agrees to submit itself and be subject to process before the courts of Mexico, waiving any statute of limitations defenses. The same reasons that warrant dismissal of the Complaint in favor of Curaçao, *see supra* at Section I, also warrant dismissal in favor of Mexico. While the parties are not currently engaged in litigation in Mexico, the fact that Plaintiff is a Mexican company and the Corporate Guarantee is governed by the laws of Mexico favors dismissal. *See* Compl. at 2 & Composite Ex. B at 14. In Mexico, Plaintiff will be at home, Mexican courts are in the best position to interpret and apply Mexican law, and Mexico likely has a stronger interest than this Court in adjudicating this controversy, which involves one of its corporate citizens. "Of all possible forums, Florida is unquestionably the worst," which would put Mexico as a close second to Curaçao and further supports dismissal. *See Ford*, 319 F.3d at 1309 (2003) (finding Florida was the worst forum because evidence was mostly outside of Florida, including all but one witness).

A.      **Basic Principles Regarding a Guarantee Under Mexican Law.**

Under Article 2794 of the Federal Civil Code (Código Civil Federal, the "Code"), a bond agreement or guarantee is a contract whereby a person agrees with the creditor to pay an obligation of the debtor if the debtor fails to do so. Ramos Decl. at Ex. A, p. 11. A guarantee is an accessory contract whose validity and enforceability is subject to, and dependent upon the existence of a principal obligation or main contract. *Id*. at p. 12. For a guarantee to be valid under Mexican law, (i) the guarantee must comply with the elements of existence and validity requirements of contracts; <u>and</u> (ii) the main obligation that gave rise to the guarantee must exist and be valid. *Id*. at p. 13. Without a valid main obligation, the guarantee is not valid. *Id*. Thus, the ancillary nature of a guarantee means that it cannot be enforced when the principal obligation is (i) extinguished, or (ii) the subject matter of a pending litigation. *Id*. ¶¶ 13-14 & at Ex. B.

B.      **The Corporate Guarantee is Invalid and Unenforceable.**

This Court should dismiss the Complaint because the Corporate Guarantee is invalid and unenforceable under Mexican law. First, the parties extinguished the Corporate Guarantee when they expressly consented to the extinguishment of the Original Loan Agreement and the Amendments to it. Second, the parties extinguished the Corporate Guarantee when the parties novated the Original Loan Agreement with substantially new agreements. Third, the "survival clause" in the Corporate Guarantee does not apply to the Amendments or to the 2015 Loan Agreement. Fourth, the Corporate Guarantee cannot be enforced because the enforceability of the Original Loan Agreement is in dispute in the Curacao Proceeding. Fifth, VMSC Miami did not, by way of the Corporate Guarantee or any other agreement, promise to secure any obligation between CAT and VMSC Curaçao other than the Original Loan Agreement. Ramos Decl. at Ex. A., pp. 18-27.

1.      **The 2007 Corporate Guarantee was Terminated by Express Consent.**

The Corporate Guarantee was terminated when CAT and VMSC Curaçao entered into the 2015 Loan Agreement.  Under that agreement, the parties *voluntarily and expressly terminated* the Original Loan Agreement and its Amendments. Ramos Decl. at Ex. A p. 23.

Under Articles 6 and 1797 of the Code, a contractual obligation can be extinguished by mutual consent. *Id*. at p. 16. Here, CAT and VMSC Curaçao expressly agreed to terminate and replace all their prior contracts, amendments, and agreements with the 2015 Loan Agreement. In Clause 20, the 2015 Loan Agreement states that "it supersedes all prior agreements, amendments

and any other understandings, written or oral, between Caterpillar and the Borrower with respect to the subject matter as set forth in this Loan Agreement and the foregoing documents." Compl. at Ex. F, p. 18. Moreover, according to Clause 2 of the 2015 Loan Agreement, its purpose was for CAT to loan VMSC Curaçao up to $110,000,000.00 that VMSC Curaçao was to use to extinguish its prior obligations – *i.e.*, for the "payment of outstanding liabilities as of the execution date of this agreement." *Id*. at p. 11. By agreeing to terminate the Original Loan Agreement and extinguish prior obligations, the parties also necessarily terminated the 2007 Corporate Guarantee, which solely guaranteed the (terminated) obligations under the Original Loan Agreement. Ramos Decl. at Ex. A, pp. 24-25. Thus, the 2007 Corporate Guarantee is unenforceable against VMSC Miami as a matter of Mexican law. *Id*. at p 24.

### 2.     The Corporate Guarantee was Terminated by Novation.

The Corporate Guarantee is also unenforceable against VMSC Miami because: (i) as explained above, the Corporate Guarantee is an accessory contract to the Original Loan Agreement, meaning that its existence depends upon the existence of the Original Loan Agreement; (ii) the Original Loan Agreement was extinguished by way of a novation; and, thus, (iii) the Corporate Guarantee no longer exists. Ramos Decl. at Ex. A, pp. 13, 18-22.

Under Articles 2213 and 2220 of the Code, novation can extinguish obligations when the parties substantially alter their contract substituting an old obligation for a new one. *Id*. at p. 14. For a novation to occur, the parties must: (i) create a new obligation that modifies the essential elements of their agreement such as the consideration (*i.e.*, the amount the debtor is bound to pay) and/or the cause or source of the obligation; and (ii) intend to novate or extinguish the prior obligation. *Id*. p. 15.  Under Article 2842 of the Code, when the main obligation that gave rise to the guarantee is extinguished, the guarantee will be equally extinct. *Id*. at p. 17.

***Multiple novations of the Original Loan Agreement extinguished it***. Through the Amendments, VMSC Curaçao and CAT (without participation of the Corporate Guarantors) novated the main obligations of the Original Loan Agreement. Ramos Decl. at Ex. A, p. 21.  In the Original Loan Agreement, VMSC Curaçao and CAT agreed on a loan of up to $4,869,229.53 which purpose was for "rental fleet and working capital." Ex. 1 at 1. The drawdown period of the Original Loan Agreement was until July 31, 2007. *Id*. at 3. Through the 1st Amendment, however, VMSC Curaçao and CAT novated the essential obligations of the Original Loan Agreement. Ramos Decl. at Ex. A, p. 19. VMSC Curaçao and CAT: (i) exponentially increased

the amount of the loan up to $55,000,000.00; (ii) substantially modified the drawdown period, extending it until November 30, 2012; and (iii) expanded the permissible use of the funds to "rental fleet and/or inventory indistinctly according to the needs of the Borrower." Ex. 2 at 2-3, Recital I.A & Clauses II-III. Through the 2d Amendment, VMSC and Caterpillar again novated the obligations originally established in the Original Loan Agreement and novated the First Amendment. Ramos Decl. at Ex. A p. 19. The 2d Amendment materially modified an obligation in the Original Loan Agreement by increasing the loan up to $68,000,000.00. Ex. 3 at 2-3, Recitals I.A-I.B & Clauses II-III. The 3d Amendment similarly novated the Original Loan Agreement and the first two Amendments. *See supra* at n. 1. Thus, under Mexican law, VMSC Curaçao and CAT substituted the main obligations of the Original Loan Agreement such that they intentionally novated (extinguished) the obligations originally established in it, replacing them with the obligations in the Amendments. Ramos Decl. at Ex. A, pp. 20-21

*The extinguishment of the Original Loan Agreement via its multiple novations also extinguished the Corporate Guarantee*. Under Mexican law, when the obligations guaranteed by the 2007 Corporate Guarantee were extinguished by multiple novations, the Corporate Guarantee also was terminated under Articles 2220 and 2842 of the Code. Ramos Decl. at Ex. A p. 20. Under Article 2826 of the Code, transactions entered by the principal creditor (CAT) and principal debtor (VMSC Curaçao) may benefit but may not prejudice the guarantor. *Id*. Because the Amendments exponentially increased the obligations of the Original Loan Agreement guaranteed under the Corporate Guarantee and allowed the loan to be used for purposes other than those originally agreed, these Amendments constituted novations and terminated the Corporate Guarantee for the benefit of Corporate Guarantors. *Id*. at pp. 20-21. Otherwise, the Corporate Guarantors would be excessively prejudiced by being obligated to guarantee substantially different obligations than those to which they were originally obliged. *Id*. at p. 21.[4]

---

[4] The law in the United States is similar to Mexican law on novation. In the U.S., a secondary obligation, including a guarantee, is discharged when the underlying obligation is modified in a manner that imposes risks on a secondary obligor that are fundamentally different from the initial risks assumed. This sort of modification amounts to a substituted contract. Several modifications, not one of which may be fundamental, but which, in the aggregate, have a fundamental effect, are treated the same way. *See* Restatement (Third) of Suretyship & Guaranty § 41 (1996), October 2022 Update. *See, also Peoples Nat'l Bank, Clay Center, Kan. v. Purina Mills, Inc.,* 931 F.Supp. 1525, 1531 (D. Kan. 1996) (material alteration without guarantor's consent will discharge guarantor); *Lyon Fin. Servs., Inc. v. Bella Medica Laser Ctr., Inc.,* 738 F.Supp.2d 856, 861 (N.D. Ill. 2010) ("If, for example, [parties to Lease] agreed, in the absence of [guarantor], to increase the liability under the Lease to an additional $1 Million, it would not be reasonable to conclude that [guarantor], when signing the Guaranty for the Lease, had the intention to agree to such an exorbitant future risk."); *In re Murchison*, 102 B.R. 545, 548 (Bankr. N.D. Tex. 1988) ("[T]he 1986 restructuring

Because the obligations guaranteed by Corporate Guarantee were extinguished by multiple novations, the Corporate Guarantee was extinguished at the same time. *Id.*

### 3.      The Survival Clause Does Not Create Future Obligations.

CAT's only hook for imposing guarantee liability upon VMSC Miami fails. CAT claims that Clause 3 of the 2007 Corporate Guarantee, entitled Survival of Obligations, imposes such liability. Compl. ¶ 14. Clause 3(b), states that "[t]o the extent allowed under applicable law, the 2007 Guarantee "shall remain in force regardless of whether Caterpillar…renews, expands, or changes the terms and conditions of the Secured Obligations or does not demand performance of the Secured Obligations." *Id.* at Ex. B pp. 4-5. This Court should reject Plaintiff's position that pursuant to this clause, in 2007, VMSC Miami agreed to guarantee *new* agreements and *exponentially-larger* debts absent notice to or consent by VMSC Miami.

Clause 3(b) is inapplicable because through the Amendments and the 2015 Loan Agreement, VMSC Curaçao and CAT did not renew, extend, or vary the terms and conditions of the Original Loan Agreement. Ramos Decl. at Ex. A, pp. 21-22. Instead, through the 2015 Loan Agreement and the Amendments, the parties extinguished altogether—both expressly and through successive novations—the main obligations of the Original Loan Agreement. *Id.* at pp. 20, 24-25. CAT acts as if the parties had modified the Original Loan Agreement only by changing the notice requirements or the parties' mailing addresses, ignoring the enormous new undertakings of the debtor (and, according to CAT, of the guarantors) as expressed in the new agreements. Clause 3(b) does not require VMSC Miami to guarantee obligations contained in *new*, subsequently-executed agreements for which VMSC had no notice and gave no consent.

Furthermore, per Clause 3(b), any "renewal, extension or variation of the terms and conditions of the Guaranteed Obligations" was to be made "to the extent permitted by applicable law." Under the law applicable to the 2007 Corporate Guarantee, *i.e.,* the Code, for a contract to exist, be valid and binding, it must comply with the elements of existence (consent and object) and validity requirements set forth in Articles 1794 and 1824 of the Code. Ramos Decl. at Ex. A p. 22. Here, however, it is undisputed that the Corporate Guarantors did not grant their consent to guarantee VMSC Curaçao's obligations under the Amendments. *Id.* This means that the Amendments are invalid under applicable law and thus they are not renewals, extensions or

---

of the…Obligations constituted a material alteration of the underlying debt guaranteed….Further, the restructuring significantly increased the risks assumed by the Debtor. Therefore, the alteration discharged the surety.").

variations of the terms and conditions of the Original Loan Agreement of the kind contemplated under the Corporate Guarantee. *Id.*

It makes no sense that CAT unilaterally could materially change the terms of the original loan and exponentially increase the guaranteed debt by more than 2400 percent but then cast this as a mere renewal or variation of the original loan. That plainly is not the intent of Clause 3(b), which is designed to ensure that the guarantee obligation survives if the Original Loan Agreement has gone through some immaterial change or CAT has not demanded performance of the Original Loan Agreement. Clause 3(b) could not have contemplated material changes to that agreement, as CAT boldly suggests, because that would extinguish the agreement and the Corporate Guarantee, as explained above.

### 4. The Corporate Guarantee Cannot be Enforced While the Original Loan Agreement is at Issue in the Curacao Proceeding.

Under Mexican law, guarantors have the right to plead any defense inherent to the principal obligation they secure. Ramos Decl. ¶ 13. In interpreting this right, courts have determined that the ancillary nature of a guarantee necessarily implies that it may not be enforced whenever the principal obligation's existence or enforceability is the subject of a pending litigation. *Id.* ¶ 14 & Ex B.  The validity and enforceability of the Original Loan Agreement is at issue in the Curacao Proceeding. Van Bemmelen Decl. ¶¶ 5, 13, 15. Because the Corporate Guarantee is an ancillary agreement to the Original Loan Agreement, it cannot be enforced while these issues are pending in Curacao. Ramos Decl. ¶ 15.  Therefore, this Court should dismiss the action, or at the very least, stay the proceeding until the Curacao court determines these issues.

### 5. VMSC Miami Did Not Consent to Guarantee the Debts in the Amendments or the 2015 Loan Agreement.

VMSC Miami did not agree to guarantee repayment of debts set forth in the Amendments and the 2015 Loan Agreement. Compl. at Ex. B, p. 10. According to Representation (g) and Recitals I-II of the Corporate Guarantee, the Corporate Guarantors solely and exclusively guaranteed VMSC Curaçao's obligations under the Original Loan Agreement. *Id.* at 10-11. The Corporate Guarantee does not guarantee VMSC Curaçao's obligations under the Amendments or under the 2015 Loan Agreement. *Id.*; *see also, infra* Section II(B)(4). Nor do the Amendments, the 2015 Loan Agreement, or any other instruments show that VMSC Miami agreed to guarantee

16

these subsequently incurred obligations of VMSC Curaçao. Thus, VMSC Miami cannot be liable as a guarantor for obligations under the subsequent agreements.

The 2015 Loan Agreement is an autonomous and independent contract that granted a new loan with a completely different purpose than that of the Original Loan Agreement. Ramos Decl. at Ex. A, p. 26. As noted, the purpose of the 2015 Loan Agreement was for VMSC Curaçao to use the $110,000,000.00 for the "payment of outstanding liabilities as of the execution date of this agreement." Compl. at Ex. F, p. 11. That is a far cry from what VMSC Miami agreed to guarantee in 2007. For its part, CAT alleges that it secured a guarantor other than the Corporate Guarantors in relation to that 2015 Loan Agreement—Mr. Bellosta. *Id*. at Ex. G p. 15. The 2015 Loan Agreement is subject to the law and jurisdiction of Curaçao, while the Original Loan Agreement was subject to the law and jurisdiction of Mexico. *Compare* Ex. 1 at 10 *with* Compl. at Ex. F p. 17. Thus, the 2015 Loan Agreement is a new agreement distinct from the Original Loan Agreement, which Guarantors did not secure through the Corporate Guarantee. Ramos Decl. at Ex. A, p. 26. Indeed, had CAT believed that the Corporate Guarantee and the Guarantors secured payment for the 2015 Loan Agreement, it would have had no reason to obtain a separate guarantee from Mr. Bellosta for the 2015 Loan Agreement. Because VMSC Miami did not guarantee VMSC Curaçao's obligations under the Amendments or the 2015 Loan Agreement, VMSC Miami cannot be liable for any debts incurred under these agreements. *Id*. at p. 26-27.

## III.   THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE OR STAYED PURSUANT TO THE DOCTRINE OF INTERNATIONAL ABSTENTION.

At a minimum, the Complaint should be dismissed or stayed under the doctrine of international abstention because of the currently-pending Curaçao Proceeding. Under this doctrine, a court can refrain from exercising its jurisdiction when parallel litigation is ongoing in another country. *See Turner Entm't Co. v. Degeto Film*, 25 F.3d 1512, 1518 (11th Cir. 1994). If a court determines that two cases are parallel, the court can analyze whether the case should be dismissed or stayed, under international abstention considerations. *See Finova Capital Corp. v. Ryan Helicopters U.S.A, Inc.*, 180 F.3d 896, 898 (11th Cir. 1999).

### A.   This Case and the Curaçao Proceeding are Parallel.

"In assessing the propriety of abstention," courts must first determine "whether the federal and foreign proceedings are in fact parallel." *Id*. "Suits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in two fora." *Id*. "[T]he 'parallel proceedings' requirement does not require that the concurrent proceedings be identical

as to parties and claims . . . ." *Risk Ins. & Reinsurance Solutions v. R+*, No. 04-61119-CIV-SEITZ/MCALILEY, 2006 U.S. Dist. LEXIS 111362, at *7 (S.D. Fla. Jan. 17, 2006) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1224 (11th Cir. 1999) (cases with significantly common issues and parties are parallel)). This case and the Curaçao Proceeding are parallel. In both cases, CAT seeks to enforce the same Corporate Guarantee, meaning that "they involve significantly common issues and parties." *Posner*, 178 F.3d at 1224.

>    **B.**    **International Abstention is Appropriate.**

Because the proceedings are parallel, the international abstention doctrine permits this Court to dismiss or stay this case. *See St. Martinus Univ., NV*, 2020 WL 956301, at *1. Three factors guide the determination of whether international abstention is proper: (1) international comity; (2) fairness to litigants; and (3) efficient use of scarce resources. *See Turner Entm't*, 25 F.3d 1518.

>    **1.**    **International Comity Favors Dismissing or Staying this Case.**

"International comity encompasses the principle of respect for the acts of sovereign nations." *Belize Telecom, Ltd. v. Gov't of Belize*, 528 F.3d 1298, 1305 (11th Cir. 2008) (citing *Turner Entm't*, 25 F.3d at 1518). Relevant considerations "include whether the foreign court is 'competent to hear the claims or would…use fair and just proceedings in deciding the case.'" *Velarde v. HSBC Private Bank Intern*, No. 13–22031–CIV, 2013 WL 5534305 at *7 (citing *Posner*, 178 F.3d at 1224). "Also relevant to the comity analysis is whether the underlying documents are subject to choice of forum or law clauses providing for jurisdiction in a foreign court, the strengths of the domestic and foreign interests, and whether the 'central question…requires a thorough knowledge of [foreign] law.'" *Id.* (citing *Turner Entm't Co.*, 25 F.3d at 1521).

It cannot be disputed that the Curaçao Court is competent to hear the claims at issue here or would use fair and just proceedings in deciding the case given that CAT elected to file its currently-pending lawsuit in the Curaçao Court to enforce the same Corporate Guarantee. Regarding the respective interests in the litigation, VMSC Miami reincorporates its arguments discussed in Section I(B)(2), *supra*, regarding public interest factors of the *forum non conveniens* analysis—Curaçao has an interest in continuing its jurisdiction over disputes already being litigated in its courts, and this is not a local controversy at root. Accordingly, international comity weighs in favor of dismissing or staying and deferring to the Curaçao Proceeding.

### 2.     Fairness to Litigants Favors Dismissing or Staying this Case

The fairness to litigants factor considers "(1) the order in which the suits were filed; (2) the more convenient forum; and (3) the possibility of prejudice to parties resulting from abstention." *Belize Telecom*, 528 F.3d at 1308 (quoting Turner *Entm't Co.*, 25 F.3d at 1521-22). First, the Curaçao Proceeding was filed first—on February 24, 2022. Van Bemmelen Decl. ¶ 4**.** Second, Curaçao is the more convenient forum for the reasons set forth above. *See supra* at Section I(B). Third, CAT will suffer no prejudice if this Court abstains. CAT will simply be put in the position of having to enforce the Corporate Guarantee against VMSC Miami in the same Curaçao Court where CAT is already seeking to enforce that guarantee and the underlying loan arrangement against VMSC Curaçao. If this case is not dismissed or stayed, the parties will have to duplicate litigation from the Curaçao Proceeding to establish the basis for the alleged breach here. And again, there is a risk that this Court and the Curaçaoan court might enter inconsistent judgments, which would most likely prompt additional litigation. Thus*,* there is no prejudice to the parties here. Rather, fairness to the litigants favors either dismissing or staying this case.

### 3.     Efficient Use of Scarce Judicial Resources Favors Abstention.

The final factor regarding efficient use of judicial resources considers: (1) the inconvenience of the federal forum; (2) avoidance of piecemeal litigation; (3) whether the actions have common parties and issues; and (4) whether the alternative forum will issue a prompt decision." *Belize Telecom*, 528 F.3d at 1308 (quoting *Turner Entm't Co.*, 25 F.3d at 1522). For the reasons discussed above, Curaçao has been and remains the more convenient forum to address Plaintiff's claim. *See supra*, at Section I(B). Because the issues in this case are pending in the Curaçao Proceeding, addressing CAT's claim here likely will give rise to piecemeal litigation. *See St. Martinus University*, 2020 WL 956301 at *14 ("The Promissory Notes Appeal is pending [in Curaçao], so addressing [plaintiff's] claim in this forum will give rise to piecemeal litigation."). As to commonality of parties and actions, the parties in both actions have significant similarities and overlap. *See, supra*, Section III(A). Finally, the Curaçao court will render a prompt decision, as proceedings typically resolve within 18 months and there is no reason to expect a delay. Van Bemmelen Decl. at ¶¶ 12, 19. Accordingly, this Court should dismiss this matter and abstain from exercising jurisdiction over it. If this Court is not inclined to dismiss, this Court should stay this case until the Curaçaoan court determines the dispositive and factual issues affecting this case. *Velarde*, 2013 WL 5534305, at *11-12 (staying case until the

19

Cayman Court ruled on the issues before it because they will likely have a substantial or controlling effect on the claims and issues before the court, avoiding inconsistent rulings on Cayman law issues); *Turner*, 25 F.3d at 1522.

## IV.   IN THE ALTERNATIVE, THIS COURT SHOULD STAY THIS CASE PURSUANT TO ITS POWER TO CONTROL ITS OWN DOCKET.

To the extent this Court does not dismiss or stay for the reasons stated above, in the alternative, "[a] district court is empowered to stay its own proceedings for purposes of conserving judicial resources and efficiently handling duplicative actions." *Velarde*, 2013 WL 5534305, at *11 (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "This authority extends to issuing a stay of its own proceedings pending the resolution of a foreign action." *Id.* "When a district court exercises its discretion to stay a case pending the resolution of related proceedings in another forum, the district court must limit properly the scope of the stay." *Trujillo v. Conover & Co. Communs., Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000). An "excellent" reason for issuing a stay besides abstention is to await another court's decision "that is likely to have a substantial or controlling effect on the claims and issues in the stayed case." *Miccosukee Tribe of Indians of Florida v. South Florida Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009).

As set forth in more detail above, *supra* at III(B)(3), the Curaçao Proceeding is likely to have a substantial and controlling effect on the issues in this case. Setting aside the fact that the Corporate Guarantee is invalid and unenforceable for the reasons discussed above, CAT's claim against VMSC Miami for guarantee liability depends wholly upon CAT establishing a breach of the underlying VMSC Curaçao-CAT loan instruments at issue in the Curaçao Proceeding. In other words, if VMSC Curaçao is found not to be liable for breach of the loan instruments, then VMSC Miami necessarily cannot be liable for breaching any guarantee of those instruments. This Court thus should issue a stay for a set period of time to give the Curaçaoan Court an opportunity to resolve the underlying loan dispute. *See, e.g.*, *Velarde*, 2013 WL 5534305, at *12 ("This case shall be stayed until the Cayman Court issues a ruling on the pending issues in the CI Proceedings, or on December 13, 2013, whichever is earlier….").

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action with prejudice and grant all other relief it deems just and proper.

Respectfully Submitted,

**GREENBERG TRAURIG, P.A.**
333 SE 2nd Avenue Suite 4400
Miami, FL  33131
Telephone:  (305) 579-0500
Facsimile:  (305) 579-0717


By: /s/ *Evelyn A. Cobos*
**Evelyn A. Cobos**
Florida Bar No. 092310
cobose@gtlaw.com
**Gabriel A. Diaz**
Florida Bar. No. 1030750
diazg@gtlaw.com

**GREENBERG TRAURIG, LLP**
77 West Wacker Drive Suite 3100
Chicago, IL 60601
Telephone:   (312) 456-1029
**Gabriel Aizenberg (*admitted pro hac vice*)**
Gabriel.aizenberg@gtlaw.com
**GREENBERG TRAURIG, LLP**
2101 L Street N.W.
Washington D.C. 20037
**Daniel Pulecio-Boek (*pro hac vice forthcoming*)**
pulecioboekd@gtlaw.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 9th day of December, 2022, the foregoing was filed with the Clerk of the Court using CM/ECF.  The undersigned also certifies that the foregoing is being served this day on all counsel of record identified on the below Service List in the matter either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner.

*/s/ Evelyn A. Cobos*
EVELYN A. COBOS